IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROY T. LEFKOE                    :
Individually and on Behalf       :
of Others Similarly Situated     :
v.                               :   Civil No. WMN-06-1892
                                 :
JOS. A. BANK CLOTHIERS et al.    :
                                 :

**MEMORANDUM**

Before the Court is the motion of Defendants Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank" or the "Company"), Robert N. Wildrick, David E. Ullman, and R. Neal Black (collectively referred to as the "Individual Defendants"), to dismiss the amended, consolidated class action complaint.  Paper No. 56. Plaintiffs have opposed the motion and Defendants have replied. Papers No. 60, 61.[1]  Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be denied.

**I.   FACTS AND PROCEDURAL BACKGROUND**

Jos. A. Bank is a clothing retailer established in 1905 which has retail stores in forty states, a mail order catalog, and extensive internet operations.  Jos. A. Bank derives most of

---

[1] Plaintiffs have also filed a Motion for Leave To File A Sur-Reply Memorandum in Further Opposition to the Motion To Dismiss.  Paper No. 62.  Defendants have filed a motion opposing this request, to which Plaintiffs responded.  Papers No. 63, 66. The Court will accept the pleadings and consider them in accordance with Local Rule 105.2(a).

its revenue from its retail stores and has a policy of keeping high levels of inventory in those stores.[2] The Company disseminates reports on an almost daily basis to regional managers, sales managers, planners, and sales associates regarding the purchase, allocation, transfer, and management of inventory. Inventory controls and related gross profit margins are often evaluated as a benchmark of the Company's financial well-being and, as a result, Jos. A. Bank executives are actively involved in the budgeting and planning process for ordering merchandise.[3]

In their Complaint, Plaintiffs allege that, beginning on December 5, 2005, Defendants issued a series of statements which falsely reassured public investors that Jos. A. Bank's gross profit margins would increase substantially throughout the final two quarters of fiscal year (FY) 2005 and into the first quarter of FY 2006. These statements also allegedly omitted knowledge of the Company's excessive levels of inventory consisting primarily of merchandise in the Fall/Winter 2005 clothing line. The excess inventory allegedly resulted from a combination of the Company's

---

[2] Plaintiffs allege that Jos. A. Bank considers "inventory availability" to be one of its so-called "Four Pillars of Success." Am. Compl. ¶ 34.

[3] Defendant Robert N. Wildrick is the Company's Chief Executive Officer, Defendant David E. Ullman is the Chief Financial Officer, and Defendant R. Neal Black is the Chief Merchandising Officer.

overestimation of customer demand for the products, geographical problems in store expansion plans, and overly ambitious timelines for opening of new retail locations.

Plaintiffs contend that Jos. A. Bank executives were aware of the inventory surplus problems and began heavily discounting the Fall/Winter 2005 merchandise to sell the clothing.[4] These discounts resulted in increased sales of the surplus merchandise, however, the aggressive pricing strategy allegedly eroded the Company's overall profit margin. The discounts had the additional effect of negatively impacting the sale of higher margin clothes from the Spring/Summer 2006 line and the core clothing line.

Though aware of the negative financial results of the inventory surplus and promotional activity, Plaintiffs allege that from December 2005 to June 2006, the Company made misleading financial statements concerning inventory and gross margin problems. On December 5, 2005, the Company filed a form 10-Q with the United States Securities and Exchange Commission (SEC) containing the financial results for the third quarter of FY 2005. That filing reported increases in earnings per share and in gross profit margin. The filing reported no problems with

---

[4] Plaintiffs allege that, to liquidate the excessive inventory, the Company embarked on an unprecedented promotional scheme, offering drastic markdowns, combining multiple sales, and keeping sales and clearance tables on the floor longer than normal. Am. Compl. ¶¶ 65-74.

3

respect to inventory, noting that "the Company's strong gross profit margins enable the Company to sell substantially all of its products at levels above cost."  Am. Compl. ¶ 102.  In a conference call held the same day among Company executives and securities analysts, the individual Defendants each made remarks reflecting their expectations for a strong fourth quarter.  Id. at ¶¶ 104-05.

At the close of the fiscal months December 2005, January 2006, February 2006, March 2006, and April 2006, the Company issued press releases announcing financial results.  In each press release, the Company reported an increase in total sales versus the comparable period in the prior fiscal year.  The press release announcing results for the fiscal month December 2005 also expressed the Company's expectation that earnings per share for FY 2005 would meet the consensus analyst estimate of an increase in comparison to earnings per share in FY 2004.  The release announcing results for the fiscal month January 2006 reported an increase in total sales for the fourth quarter of FY 2005.

In addition to false or misleading statements put forth in the press releases, Plaintiffs allege that on February 22, 2006, Ullman attended an institutional investor's conference on behalf of Jos. A. Bank where he participated in a question and answer session with the audience.  There, Ullman addressed the Company's

4

desire to decrease its level of promotional activity while maintaining its inventory and its upscale appeal.  Plaintiffs contend that, in light of Ullman's knowledge of Jos. A. Bank's excess inventory and resultant increased promotional activity, these statements were materially false and misleading.  Am. Compl. ¶ 117.

On April 12, 2006, the Company filed its form 10-K with the SEC, reporting its financial results for FY 2005.  In it, the Company noted, as it did in its form 10-Q filed in December 2005, that the strong gross profit margins enabled sales of products at levels above cost.  A press release issued the same day reflected the information contained in the form 10-K, reporting increases in net income and earnings per share and confirmed that total sales increased in the fourth quarter of FY 2005 as compared with sales in the same prior year period.  On April 13, 2006, Wildrick, Ullman, and Black participated in a conference call to discuss the 10-K filing.  During the call, they expressed confidence in the Company's inventory situation and optimism for continued growth.  Plaintiffs allege that the filings and the statements made during the conference call belied Defendants' knowledge that prices on the Fall/Winter 2005 clothing line had been substantially lowered, and misled investors regarding the

excesses in inventory.[5]  On May 4, 2006, the Company filed its Annual Report for FY 2005 with the SEC which included a copy of the form 10-K filed on April 12, 2006.  The report also contained a "Letter to Stockholders" signed by Wildrick summarizing the Company's financial performance for FY 2005.  Plaintiffs allege that both the letter and the information contained in the Annual Report were also misleading.

On June 7, 2006, the Company filed its Form 10-Q, reporting financial results for the first quarter of FY 2006.  The June 10-Q reported a decrease in both net income and earnings per share in comparison with the first quarter of FY 2005.  The Company attributed the decline to a decrease in gross profit margins due to increased sales of promotional fall products and lower sales of core merchandise.  These financial results were repeated in a June 8, 2006, press release.  Following the announcement, Jos. A. Bank stock fell approximately 29% with a trading volume more than 20 times that of the previous day.

The instant suit was initially filed on July 24, 2006, and on November 20, 2006, this Court consolidated the action and

---

[5] In addition to their general contention that Defendants' filings were false or misleading, Plaintiffs also contend that the financial reports Defendants filed with the SEC during the relevant class period violated the generally accepted accounting principles (GAAP).  Those principles are accepted by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices.  Financial statements filed with the SEC that are not prepared in conformity with GAAP are presumed to be misleading or inaccurate.  17 C.F.R. § 210.4-01(a)(1).

6

appointed the Massachusetts Labor Annuity Fund ("MLAF") as lead plaintiff.  On February 23, 2007, Plaintiffs filed an Amended Complaint, alleging that Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder  by making false or misleading statements in connection with the sale of securities.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Plaintiffs also allege that the Individual Defendants violated § 20(a) of the Exchange Act, which assigns joint and several liability to a person who controls another who violates a securities regulation.  15 U.S.C. § 78t(a).  In the instant motion, Defendants contend that Plaintiffs have failed to plead their causes of action with the particularity required under the Exchange Act and the Private Securities Litigation Reform Act (PSLRA).

**II.  STANDARD OF LAW**

Generally, a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).[6]  Unique requirements exist, however, for class

---

[6] In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint as well as the documents attached to the complaint.  In re Criimi Mae, Inc. Sec. Litig., 94 F.Supp.2d 652, 656 (D. Md. 2000).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  Id.

7

actions alleging securities fraud.  The PSLRA provides that in pleading a material misrepresentation or omission in violation of § 10(b) of the Exchange Act and Rule 10b-5, the plaintiff must plead specific facts.  15 U.S.C. § 78u-4(b)(1) (providing that the complaint must specify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").  Additionally, because Rule 9(b) of the Federal Rules of Civil Procedure requires that all allegations of fraud be stated with particularity, where fraudulent financial projections are alleged, the heightened pleading requirements of Rule 9(b) must be satisfied.[7]  Keeney v. Larkin, 306 F. Supp. 2d 522, 527 (D. Md. 2003).  Further, in alleging scienter, as required under § 10(b) and Rule 10b-5, the plaintiff must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Any complaint not meeting the pleading requirements

---

[7] Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), the "circumstances" required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

8

may be dismissed.  Id. § 78u-4(b)(3)(A).

"Thus, while the Federal Rules generally allow a court, in ruling on a motion to dismiss under Rule 12(b)(6), to take into account any set of facts that could be proved consistent with the allegations of the complaint, even though such facts have not been alleged in the complaint, the PSLRA modifies this scheme (1) by requiring a plaintiff to plead facts to state a claim and (2) by authorizing the court to assume that the plaintiff has indeed stated all of the facts upon which he bases his allegation of a misrepresentation or omission."  Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 172 (4th Cir. 2007) (citing 15 U.S.C. § 78u-4(b)(1)).  As with any motion to dismiss for failure to state a claim, however, the Court will accept the facts alleged in the complaint as true.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., - U.S. -, 127 S. Ct. 2499, 2509 (2007).

**III.  DISCUSSION**

**A.  False Statements or Omissions of Material Fact**

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, prohibit fraud in the sale purchase or sale of securities.[8]  To state a claim under § 10(b) of the Exchange Act

---

[8] Section 10(b) of the Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security . . ., [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  Rule 10b-5 provides:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any

9

and Rule 10b-5, a plaintiff must allege that "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied[9] (4) that proximately caused the plaintiff's damages."  Hillson Partners Ltd. v. Adage, Inc., 42 F.3d 204, 208 (4th Cir. 1994); 15 U.S.C. § 78u-4(b).

In satisfying the first element of a § 10(b) claim, a plaintiff must point to a factual statement or omission.  Longman v. Food Lion, Inc., 197 F.3d 675, 682-83 (4th Cir. 1999) (noting that a factual statement is "one that is demonstrable as being true or false").  The statement identified "must be false, or the omission must render public statements misleading" and "any statement or omission of fact must be material."  Id.  "[A] fact

---

> facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

[9] Where, as here, a plaintiff pursues a securities fraud action based on a fraud-on-the-market theory, it is not necessary to prove individual reliance on the false or misleading statements.  Criimi Mae, 94 F. Supp. 2d at 656.

10

stated or omitted is material if there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." Id. (citing Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)).

Defendants first argue that Plaintiffs have failed to satisfy the first element of a § 10(b) claim because the Complaint "does not explain how the statements are supposedly false[.]" Mot. to Dismiss 16; In re Criimi Mae, Inc., 94 F. Supp. 2d at 657 (noting that "[p]articularity of pleading is required with regard to . . . the manner in which the statements are false and the specific facts raising an inference of fraud"). To adequately plead falsity in accordance with the first element of a § 10(b) claim, a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." In re Humphrey Hospitality Trust, Inc. Sec. Litig., 219 F. Supp. 2d 675, 682 (D. Md. 2002) (internal quotations omitted).

Here, Plaintiffs have adequately specified the content of the alleged misrepresentations and misleading omissions. See Am. Compl. ¶¶ 108-39. Plaintiffs contend that, on approximately 12

11

separate occasions, Defendants affirmatively misrepresented inventory issues and omitted from public statements their knowledge of the Company's excessive levels of inventory over the class period, its need to steeply discount inventory, and the resulting harm to sales of core merchandise and the Spring 2006 line.  Id.  For each alleged misrepresentation, Plaintiffs have identified the speaker and stated where and when the statements or omissions were made.  Id.  Plaintiffs further allege that the statements and omissions were fraudulent or misleading because they concealed the fact that the Company's inventories of Fall/Winter 2005 merchandise had swelled to unprecedented levels, forcing the Company to take drastic action to liquidate the merchandise.  Id. ¶¶ 45-63.  In making such allegations, Plaintiffs have contrasted the statements and omissions alleged in the Complaint with the alleged personal knowledge of Defendants.  See, e.g., Am. Compl. ¶¶ 45-59, 60-63, 71-77, 88-84.  For example, with respect to Defendants' February 22, 2006, statements regarding Defendants' comfort with the Company's inventory and promotional activity and an expected increase in gross profit margins, Plaintiffs allege that, at the time, Defendant Ullman knew "that gross profit margins were dramatically decreasing due to the steep price discounts, virtually continuous sales, and other agressive pricing strategies undertaken by the Company to alleviate the excessive

12

Fall/Winter 2005 inventories[.]"  Am. Compl. ¶¶ 117-118.

In further support of their contention that Defendants statements were false or misleading, Plaintiffs provide statements from 18 former Company employees regarding specific inventory practices.  See In re Cree Sec. Litig., 333 F.Supp.2d at 472 ("As a general matter, a plaintiff may rely on confidential sources to substantiate his claims for securities fraud.").  While the identity of the employees remains confidential, Plaintiffs have provided titles and job descriptions and the statements presented from the witnesses arise from their individual personal knowledge and concern the core facts underlying the Complaint.  See In re Trex Co., Inc. Sec. Litig., 454 F.Supp.2d 560, 573 (4th Cir. 2006) ("A confidential witnesses' testimony can be used in pleading under the PSLRA so long as the testimony involves facts of which the witnesses had personal knowledge.").  Defendants argue that the employee statements should be accorded less weight due to their confidential nature.  At this stage in the litigation, however, factual issues concerning the credibility and weight of the employee statements will be construed in favor of Plaintiffs. See Tellabs, Inc., 127 S. Ct. at 2509.

Finally, Plaintiffs argue that a reasonable investor would have relied on Defendants' statements and omissions as reflecting consequential facts about the Company.  Thus, Plaintiffs contend that the alleged statements and omissions satisfy the materiality

13

component of a § 10(b) claim.  Defendants argue that the alleged statements constitute immaterial "puffery" upon which no reasonable investor would rely in making investment decisions. See Longman v. Food Lion, Inc., 197 F.3d 675, 683 (4th Cir. 1999) (noting that "opinion or puffery will often not be actionable, [however], in particular contexts when it is both factual and material, it may be actionable").  Were Defendant's alleged comments limited merely to expressions of optimism or vague generalizations, Plaintiffs would have been unable to satisfy the materiality requirement.  Plaintiffs have alleged, however, specific statements concerning forecasts of growth in earnings and sales, and confidence in inventory.  See, e.g., Am. Compl. ¶¶ 109, 113, 133.  Plaintiffs have also alleged specific failures to disclose the excessive inventory build-up and the resultant need to engage in steep discounting.  Id. at ¶¶ 105, 109.  Thus, the Court finds that Plaintiffs have alleged material misrepresentations and omissions in satisfaction of the first element of § 10(b).[10]

---

[10]  Defendants also contend that the alleged misrepresentations are inactionable as they were accompanied by meaningful cautionary language, in accordance with the safe harbor provision of the PSLRA.  See 15 U.S.C. § 78u-5(c)(1)(A)(i) (precluding from liability forward-looking statements "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement").  Plaintiffs contend that many of the challenged statements and omissions are not forward-looking.  See Am. Compl. §§ 105, 109, 113, 117.  Additionally, the adequacy of cautionary language is a question of fact, and, typically, is not a question to be

## B. **Scienter**

Under the PSLRA, a plaintiff must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Allegations of scienter will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc., 127 S. Ct. at 2510. In determining whether a plaintiff has met this requirement, the Court will accept all factual allegations in the Complaint as true, will consider the Complaint in its entirety, along with other sources courts normally examine when ruling on a Rule 12(b)(6) motion, and will take into account all plausible opposing inferences. Id. at 2509-10.

Here, Plaintiffs support their allegation of scienter by arguing that Defendants, via their individual positions within the Company, possessed the power and authority to control the content of the Company's public statements. See Am. Compl. ¶ 23. Plaintiffs also allege that Defendants knew of the excessive inventory levels during the class period and knew that an unprecedented level of promotional activity would be required to liquidate that inventory. In support of those contentions, Plaintiffs cite numerous internal reports used for forecasting,

---

resolved on a motion to dismiss. See Blatt v. Corn Products Intern., Inc., No. 05-C-3033, 2006 WL 1697013, at *5 (N.D. Ill. June 14, 2006).

purchasing, transferring, and managing inventory, to which Defendants each had access.  Am. Compl. ¶ 38.  Finally, Plaintiffs allege that Defendant Wildrick's sale of 74% of his common stock in the Company during the class period, for an alleged profit of $36 million, supports an inference of scienter. See In re Oxford Health Plans, Inc., 187 F.R.D. 133, 140 (S.D.N.Y. 1999) (noting that "[t]here is no guide for determining whether certain insider trades are unusual or suspicious in amount.  Large volume trades may be suspicious[,] but where a corporate insider sells only a small fraction of his or her shares in the corporation, the inference of scienter is weakened.").

In arguing that Plaintiffs have failed to allege scienter with the requisite specificity, Defendants primarily contend that Wildrick's stock sales during the relevant class period cannot support a strong inference of scienter.  Defendants argue that, because neither Ullman nor Black sold any stock during the same period, any inference of fraud must be negated.  See In re Humphrey Hospitality Trust, Inc. Sec. Litig., 219 F. Supp. 2d 675, 686 (D. Md. 2002) (noting that "Courts have found that where some defendants did not profit from the alleged fraud, any inference of scienter is negated as to all the defendants").  In Humphrey, however, the allegation of scienter rested entirely on the allegation that one of the defendants had sold 5% of his holdings during the relevant class period.  The volume and percentage of Wildrick's sale are much larger than those alleged

16

in Humphrey, and Plaintiffs' allegations of scienter do not rest solely on Wildrick's stock sale.[11]  Defendants do not challenge that they had access to reports which would have reflected the inventory build-up and resultant need for massive promotional activity.  Considering Plaintiffs' allegations in their entirety, the Court finds that, at this stage in the litigation, Plaintiffs have alleged facts sufficient to support an inference of scienter at least as compelling as any opposing inference.  See Arnlund v. Deloitte & Touche LLP, 199 F. Supp. 2d 461, 475 (E.D. Va. 2002) (noting that "it must be remembered that a plaintiff generally must frame the facts respecting [scienter] without the benefit of discovery, and therefore, most often, allegations about a defendant's culpable state of mind must be drawn from limited state of mind evidence augmented by circumstantial facts and logical inferences).

### C. Loss Causation

The PSLRA requires a plaintiff to prove "that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u-4(b)(4).  "Loss causation is not one of the elements with respect to which the PSLRA imposes a more stringent pleading

---

[11] Defendants also contend that Wildrick's sales of stock were made pursuant to a Rule 10b5-1 trading plan, under which the sales were scheduled in advance of the class period. Raising the affirmative defense of trading under a 10b5-1 trading, however, is "typically premature . . . in a motion to dismiss."  In re Cardinal Health Inc. Sec. Litig., 426 F. Supp. 2d 688, 734 (S.D. Ohio 2006).

17

requirement."  Teachers' Retirement Sys. Of LA v. Hunter, 477 F.3d 162, 185 (4th Cir. 2007).  In satisfying the pleading requirements for the element of loss causation under a § 10(b) claim, a plaintiff must allege "that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005).

    Here, Plaintiffs allege that the Company's numerous class-period misrepresentations and omissions, as well as the Company's alleged violations of GAAP, created an inaccurate picture of the Company's financial condition.  Defendants contend that Plaintiffs allegations of loss causation cannot be supported by the alleged GAAP violations, as those alleged violations were never corrected or disclosed to the public.  See In re Daou Systems, Inc., 411 F.3d 1006, 1027 (9th Cir. 2005) (noting that, where loss is suffered prior to revelations of the Company's allegedly fraudulent accounting practices, such loss cannot be considered causally related to those practices).  Plaintiffs' allegations of loss causation, however, encompass more than the alleged GAAP violations.  Plaintiffs broadly allege that Defendants' misrepresentations and omissions throughout the class period concealed the true financial status of the Company.  As a result of this concealment, upon revelation of the true financial status of the Company via the June 7, 2006, statement disclosing

18

a decline in gross profit margins, the Company's stock price fell approximately 29%.  These broad allegations are sufficient to satisfy the loss causation pleading requirements for a § 10(b) claim at this stage in the litigation.  See id. (holding that "assertions of a steep drop in [the company's] stock price following the revelation of [the company's] true financial situation are sufficient to enable the complaint to survive a motion to dismiss").

**IV. CONCLUSION**

For the foregoing reasons, Defendants motion to dismiss will be denied.[12]  A separate order consistent with this Memorandum will follow.

/s/

_____
William M. Nickerson
Senior United States District Judge

Dated: September 10, 2007

---

[12] Defendants predicated their challenge to the sufficiency of Plaintiffs' claim under § 20(a) of the Exchange Act on the assumption of Plaintiffs' failure to state a well-pled § 10(b) claim.  As Defendants' motion to dismiss fails with respect to the § 10(b) claim, it will also be denied with respect to the § 20(a) claim.

19