## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROY T. LEFKOE                    :
Individually and on Behalf       :
of Others Similarly Situated     :
                                 :
v.                               :    Civil No. WMN-06-1892
                                 :
JOS. A. BANK CLOTHIERS <u>et al.</u>   :
                                 :

### MEMORANDUM

Before the Court is the motion for judgment on the pleadings filed by Defendants Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank" or the "Company"), Robert N. Wildrick, David E. Ullman, and R. Neal Black (collectively referred to as the "Individual Defendants"). Paper No. 80. Also pending are Defendants' motion for leave to amend their answer, Paper No. 94, and motion to compel.[1] Paper No. 97. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion for leave to amend will be granted, Defendants' motion for judgment will be denied, and that Defendants' motion to compel will be granted in part and denied in part.

## I.   FACTS AND PROCEDURAL BACKGROUND

The factual background of this consolidated, class action complaint has been set forth in a prior opinion of this Court and

---

[1]Plaintiff also has recently filed a motion for class certification, Paper No. 105, which is not yet ripe.

1

will not be repeated here.  <u>See</u> Sept. 10, 2007, Mem. Op. (Paper
No. 70) (<u>Lefkoe I</u>).  Briefly stated, however, Plaintiff
Massachusetts Laborers Annuity Fund (MLAF) alleges that, between
December 5, 2005, and June 7, 2006 (the Class Period), Defendants
issued a series of statements which falsely reassured public
investors that Jos. A. Bank's gross profit margins would increase
substantially during the first quarter of FY 2006.[2]  These
statements allegedly omitted knowledge of the Company's excessive
levels of inventory consisting primarily of merchandise in the
Fall/Winter 2005 clothing line.

On June 7, 2006, the Company filed its Form 10-Q, reporting
financial results for the first quarter of FY 2006.  The first
quarter 10-Q reported a decrease in both net income and earnings
per share in comparison with the first quarter of FY 2005.
Following the announcement, Jos. A. Bank's stock fell
approximately 29% with a trading volume more than 20 times that
of the previous day.

In the months that followed, several lawsuits were
initiated.  On November 20, 2006, this Court consolidated the
actions and appointed MLAF as lead plaintiff.  On February 23,
2007, Plaintiff filed an Amended Consolidated Class Action
Complaint (Amended Complaint), alleging that Defendants violated

---

[2]The first quarter of FY 2006 spanned the three months
between January 29, 2006, and April 29, 2006.

§ 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by making false or misleading statements in connection with the sale of securities.  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Plaintiff also alleges that the Individual Defendants violated § 20(a) of the Exchange Act, which assigns joint and several liability to a person who controls another who violates a securities regulation.  15 U.S.C. § 78t(a).

On April 3, 2007, Defendants moved to dismiss for failure to state a claim, arguing that Plaintiff failed to plead its causes of action with the particularity required under the Exchange Act and the Private Securities Litigation Reform Act (PSLRA).  On September 10, 2007, this Court denied that motion in its entirety.

On November 15, 2007, Defendants answered and, shortly thereafter, filed the instant motion for judgment on the pleadings, arguing that dismissal is appropriate for failure to satisfy the scienter requirement under the PSLRA.  Defendants acknowledge that the same argument was raised and rejected by this Court in resolving the motion to dismiss, but contend that, in light of a recent Supreme Court decision, case law applying that decision and the fact that a broader array of materials may be considered in ruling on a motion for judgment on the pleadings, that this Court should reevaluate its decision to

allow this case to go forward.[3]  Alternatively, if this Court

denies the instant motion, Defendants move for certification of

an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II.  MOTION FOR LEAVE TO AMEND ANSWER

As an initial matter, the Court must address Defendants'

motion for leave to amend its Answer to assert two additional

affirmative defenses.[4]  Plaintiff opposes the motion for leave on

the basis of futility.

---

[3]Plaintiff initially moved for summary denial of the motion
for judgment on the pleadings, arguing that it was essentially an
untimely motion for reconsideration.  Paper No. 84.  This Court
denied the motion for summary denial and directed Plaintiff to
respond to the motion for judgment.  See Feb. 15, 2008, Letter
Order.

[4]The affirmative defenses Defendants seek to assert are as
follows:
TENTH AFFIRMATIVE DEFENSE
The independent Special Litigation Committee of
Jos. A. Bank's Board of Directors ("SLC"), which
investigated the allegations set forth in the [Amended
Complaint], determined that there is a complete lack of
factual support for the claims of factual wrongdoing
that are the purported basis of this case. . . . .

ELEVENTH AFFIRMATIVE DEFENSE
In Spring 2006, in response to a letter from an
anonymous shareholder, an independent investigation
regarding allegations similar to those alleged in the
[Amended Complaint] was authorized by [the Company]'s
Audit Committee and conducted by outside counsel
WilmerHale and the accounting firm Ernst & Young. . . .
[T]he investigation concluded that there was no
evidence to support the allegations made by the
anonymous shareholder.

Proposed Am. Answer at 27.  Defendants attach and incorporate as
exhibits to the Amended Answer the SLC Report and the minutes of
a Board Meeting addressing the Audit Committee's findings.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, prior to trial, leave to amend pleadings should be freely given.  Fed. R. Civ. P. 15(a)(2).  In this circuit, leave to amend should be denied only when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile."  Sciolino v. City of Newport News, Va., 480 F.3d 642, 651 (4th Cir. 2007) (internal quotation omitted).  A proposed amendment is "futile" if it "is clearly insufficient or frivolous on its face."  Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986).

Plaintiff argues that neither of the proposed defenses are "legitimate affirmative defenses" as each denies the allegations of the Amended Complaint.  Opp'n at 2.  Defendants reply that the Tenth and Eleventh Affirmative Defenses are proper affirmative defenses, but that even if they are more properly labeled as denials, leave to amend still should be granted.

The Court agrees with Plaintiff that neither of the asserted defenses are properly labeled affirmative defenses.  See Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988)(quoting In re Rawson Food Service Inc., 846 F.2d 1343, 1349 (11th Cir. 1988))("'A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense.'").  Defendants acknowledge that the proposed new defenses are offered to "support Defendants' position that even if Plaintiff's claims

5

regarding [the Company]'s sales and inventory are accurate, which they are not, Defendants still do not have the requisite scienter to support a securities fraud claim." Reply at 4.  Thus, the averments are intended to deny scienter - a necessary element of a prima facie case of securities fraud.  See, e.g., Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 342 (4th Cir. 2003) (elements of a securities fraud claim).  The Court will nonetheless grant the motion for leave to amend, treating the purported affirmative defenses as specific denials.  See 5 Wright & Miller, Federal Practice & Procedure, § 1269 (3rd ed. 2004) (noting that "the federal courts have accepted the notion of treating a specific denial that has been improperly denominated as an affirmative defense as though it were correctly labeled").

## II.  MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Standard of Law

A motion for judgment on the pleadings under Rule 12(c) asserting failure to state a claim is decided under the identical standard as a motion to dismiss under Rule 12(b)(6).  See Burbach Broad Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002).  Accordingly, the Court accepts all of the well pled allegations in the complaint as true and, except as modified by the PSLRA, makes all reasonable factual inferences in favor of the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).

### B. Recent Supreme Court Authority

The Supreme Court recently clarified the heightened pleading

standard with respect to scienter under the PSLRA in <u>Tellabs, Inc. v. Makor Issues & Rights, LTD.</u>, 127 S.Ct. 2499 (2007).  The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The <u>Tellabs</u> Court held that, in order to determine if a complaint satisfies this threshold, courts must engage in a "comparative evaluation" and "must consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." <u>Tellabs</u>, 127 S.Ct. at 2504.  Moreover, the Supreme Court held that "to qualify as 'strong' within the intendment of § 21D(b)(2), . . . an inference of scienter must be more than merely plausible or reasonable - it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." <u>Id.</u>

<u>Tellabs</u> was decided just days after the briefing on Defendants' motion to dismiss concluded.  Plaintiff filed a notice of supplemental authority and Defendants responded. <u>See</u> Papers No. 67-68.  The Court did not request additional briefing from the parties at that time and resolved to deny the motion to dismiss.  In so doing, the Court quoted pertinent portions of the <u>Tellabs</u> decision and applied the standard enunciated therein. <u>See, e.g.</u>, <u>Lefkoe I</u> at 17 (finding that "Plaintiffs have alleged facts sufficient to support an inference of scienter at least as compelling as any opposing inference").

Defendants contend, however, that the Court did not perform the comparative evaluation demanded by <u>Tellabs</u> and, in fact, could not do so because "the parties had not provided the Court with a formal presentation of the competing inferences of scienter."[5]   <u>See</u> Mot. at 3.   Defendants also argue that, post-<u>Tellabs</u>, allegations based on confidential sources should be sharply discounted.   Lead Plaintiff responds that the Court properly applied <u>Tellabs</u> in resolving the motion to dismiss and that <u>Tellabs</u> does not alter the weight to be accorded to confidential witnesses.

## C.  Materials Before the Court on a Rule 12(c) Motion

Before considering Defendants' arguments, the Court first must determine what materials properly are before this Court on a Rule 12(c) motion.   It is clear that the Court may consider public documents appropriate for the taking of judicial notice and documents referred to in the complaint and relied upon by the plaintiff in bringing the action.   <u>See In re Criimi Mae, Inc.</u>

---

[5]Defendants also assert that the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombley</u>, 127 S. Ct. 1955 (2007), impacts this Court's analysis.   <u>Twombley</u> was decided on May 21, 2007, prior to the completion of briefing on the motion to dismiss. Defendants neither referenced the decision in their reply brief nor filed a notice of supplemental authority.   Accordingly, this argument is not well taken.

In any event, the Court cannot see how the Supreme Court's pronouncement in <u>Twombley</u> with respect to the pleading standard under Rule 8(a) is relevant to this case, which was decided under the heightened pleading standards of Rule 9(b) and the PSLRA. <u>See Lefkoe I</u> at 8 (setting forth the heightened standard under Rule 9(b) and the PSLRA).

Sec. Litig., 94 F. Supp. 2d 652, 656 (D. Md. 2000).  The Court also may consider the pleadings as a whole, which includes the answer to the complaint.  See Fed. R. Civ. P. 7(a).  Accordingly, the factual allegations in the answer also may be taken as true "to the extent they have not been denied or do not conflict with the complaint."  Pledger v. North Carolina Dep't of Health and Human Servs., 7 F. Supp. 2d 705, 706 (E.D.N.C. 1998).  Since no reply to an answer is required unless ordered by the Court, Fed. R. Civ. P. 7(a)(7), however, all of the factual allegations in an answer are deemed denied.  See Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided"); Jadoff v. Gleason, 140 F.R.D. 330, 331-32 (M.D. N.C. 1991) (factual allegations in an answer are deemed denied and may not be considered on a motion for judgment on the pleadings).

There is disagreement as to the extent that this Court may consider exhibits to Defendants' answer in deciding a motion for judgment on the pleadings.  The majority of the exhibits attached to Defendants' answer are publically available press releases, SEC filings, and earnings conference call transcripts and Plaintiff agrees that the Court may consider these exhibits. Plaintiff objects to three exhibits, however - 1) the report of the Special Litigation Committee (SLC Report), 2) minutes from a Board meeting addressing findings of the Audit Committee (Minutes), and 3) Individual Defendant Wildrick's Rule 10b5-1 stock divestment plan.

The SLC Report, issued on February 7, 2008, is the product of a four-month investigation into allegations raised in a shareholder derivative suit that are essentially the same as those raised in the instant suit.  The SLC hired outside attorneys to assist in the investigation, interviewed current and former employees of the Company, and reviewed "thousands of relevant documents" before concluding that there was no merit to the shareholder's allegations.  SLC Report at 1-3.

The Minutes, which were an exhibit to the SLC Report, reflect that, on March 15, 2006, - in the midst of the Class Period - the Board received an anonymous letter raising allegations with respect to excessive inventory, inappropriate stock sales by Wildrick, false statements about inventory, and certain allegedly inappropriate accounting practices with respect to inventory.  Minutes at 1.  The Minutes reflect that, in response to the letter, the Audit Committee, through outside counsel, conducted an investigation into the allegations in the letter and concluded that they were without merit.

The Eleventh Circuit has considered the extent to which a Court may consider exhibits to an answer on a 12(c) motion.  In Horsley v. Feldt, 304 F.3d 1125 (11th Cir. 2002), the plaintiff brought a defamation suit based on statements made by defendants at a press conference as reported in a newspaper article and on a television broadcast.  The defendants attached to their answer copies of the newspaper article and a transcript of a television broadcast.  In determining whether the attachments could be

considered on a 12(c) motion, the <u>Horsley</u> Court noted that, under
the conversion provision applicable to Rules 12(b)(6) and 12(c)[6],
matters "outside the pleadings" could not be considered without
converting the motion into a motion for summary judgment.  <u>See</u>
Fed. R. Civ. P. 12(d).  The Federal Rules define pleadings to
include both a complaint and an answer, Fed. R. Civ. P. 7(a), and
"[a] copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."  Fed. R. Civ. P.
10(c).  Thus the <u>Horsley</u> Court reasoned that "[i]t would seem to
follow that if an attachment to an answer is a 'written
instrument,' it is part of the pleadings and can be considered on
a Rule 12(c) motion for judgment on the pleadings without the
motion being converted to one for summary judgment."  304 F.3d at
1134.  The court concluded, however, that the "incorporation by
reference" doctrine applicable in the context of a 12(b)(6)
motion to dismiss also should apply to a Rule 12(c) motion.
Under that doctrine,

> a document attached to a motion to dismiss may be
> considered by the court without converting the motion
> into one for summary judgment only if the attached
> document is: (1) central to the plaintiff's claim; and

---

[6]The conversion provisions had been included within Rule
12(b)(6) and Rule 12(c).  The recent amendments to the Federal
Rules of Civil Procedure deleted the conversion clause from those
subsections, however, moving it instead to its own subsection,
which reads, in pertinent part:

> (d) **Result of Presenting Matters Outside the Pleadings**.
> If, on a motion under 12(b)(6) or 12(c), matters
> outside the pleadings are presented to and not excluded
> by the court, the motion must be treated as one for
> summary judgment . . . ."

Fed. R. Civ. P. 12(d).

(2) undisputed.  "Undisputed" in this context means
that the authenticity of the document is not
challenged.

Id. at 1134-35.  This result was warranted because "[o]therwise,
the conversion clause of Rule 12(c) would be too easily
circumvented and disputed documents attached to an answer would
have to be taken as true at the pleadings stage.  The written
instrument provision of Rule 10(c) does not require that."
Id. at 1135.  See also Farmer v. Wilson Housing Authority, 393 F.
Supp. 2d 384, 386 (E.D.N.C. 2004) (citing Horsley for the above
stated principles); Marshall v. La-Z-Boy, Inc., No. 2:06-CV-378,
2007 WL 3232188 *4 (N.D. Ind. October 30, 2007) (refusing to
consider a severance agreement attached to a defendant's answer
on a 12(c) motion because it was not central to the plaintiff's
claim and was not referred to in her complaint).  The Horsley
Court concluded that the newspaper article properly could be
considered because the plaintiff had quoted from them in his
complaint and relied upon them, but that since there was a
dispute as to whether the television transcript reflected the
full remarks of the defendants, and thus was the basis for
plaintiff's claims, it could not be considered.

     The Court is persuaded by the reasoning of the Horsley Court
that only those documents incorporated by reference into the
complaint may be considered in ruling on a motion for judgment on
the pleadings.  The SLC Report and the Minutes are non-public
documents that were not referenced in Plaintiff's complaint.
While their authenticity is not challenged, they cannot be deemed

12

central to Plaintiff's claim in that the Plaintiff does not in any way rely on the documents in pleading a <u>prima facie</u> case of securities fraud.  Rather, the documents are central to one of Defendants' defenses in this matter - that they lacked scienter. Accordingly, this Court may not consider these documents on a 12(c) motion without converting the motion into one for summary judgment.

Wildrick's Rule 10b5-1 plan[7] is referenced in the Plaintiff's complaint.  In pleading scienter, Plaintiff alleged that Wildrick sold 853,123 shares of Company stock during the Class Period.  <u>See</u> Am. Comp. at ¶ 155.  Plaintiff further alleged that Wildrick "sold some or all of his stock pursuant to a Rule 10b5-1 plan which he established on October 3, 2005," but that "by the time that Wildrick established this plan and began trading under it, he was already aware of material adverse non-public information[.]"  <u>Id.</u> at ¶ 157.  Plaintiff agrees that this Court may take judicial notice of the fact that Wildrick entered into a 10b5-1 plan, because that information is available from public SEC filings, but argues that the Court may not consider the substance of Wildrick's plan.  Defendants contend that both the existence of and the substance of the plan properly may be considered by the Court.  This same argument was made and

---

[7]A 10b5-1 plan refers to a periodic divestment plan that purports to meet SEC requirements for an affirmative defense to insider trading.  The plan must be entered into prior to the insider becoming aware of any material, nonpublic information that would otherwise prohibit trades.  <u>See</u> 17 C.F.R. § 240.10b5-1.

rejected when the Court ruled on the motion to dismiss.[8]  The 10b5-1 plan, like the other excluded exhibits, is not central to Plaintiff's claim, but rather to Defendants' defense to that claim.  Thus, while the existence of the plan is properly before the Court by virtue of the SEC filing, the plan itself is not.[9]

### D. Scienter

The Court now turns to the merits of the motion for judgment on the pleadings.  In denying Defendants' motion to dismiss, this Court concluded that Plaintiff had adequately plead that Defendants made materially false or misleading statements and omissions during the Class Period.  Specifically, the Court concluded that Plaintiff plausibly alleged that "on approximately 12 separate occasions, Defendants affirmatively misrepresented inventory issues and omitted from public statements their knowledge of the Company's excessive levels of inventory over the class period, its need to steeply discount inventory, and the resulting harm to sales of core merchandise and the Spring 2006 line."  Lefkoe I at 11-12.

Defendants urge this Court, however, to revisit its determination that these false and misleading statements were

---

[8]Defendants had attached Wildrick's Rule 10b5-1 plan as an exhibit to their reply brief in support of the motion to dismiss.

[9]Neither party has asked the Court convert the motion for judgment on the pleadings into a motion for summary judgment and, given that fact discovery has just begun and is expected to last more than a year, conversion is not appropriate at this time.

made with scienter – "'a mental state embracing intent to deceive, manipulate, or defraud.'"  Tellabs, 127 S.Ct. at 2507 (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-195 (1976)).  A plaintiff may establish scienter by showing intentional conduct or recklessness.  See Ottmann, 353 F.3d at 343; See also Tellabs, 127 S.Ct. at 2508 n.3 (specifically declining to consider whether a showing of recklessness is sufficient for liability under § 10(b), but noting that every Circuit that has considered the issue has so held).  The Fourth Circuit has defined "recklessness" for purposes of the securities laws as "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  Phillips v. LCI Int'l, Inc., 190 F.3d 609, 621 (4th Cir. 1999) (internal quotation marks omitted).[10]  Finally, the Fourth Circuit has rejected group pleading under the PSLRA and, as such, "to allege a securities fraud claim against individual defendants, a plaintiff must allege facts that support a "strong inference" that each defendant acted with at least recklessness in making the false

---

[10]Defendants curiously assert that Plaintiff alleges only intentional, and not reckless, conduct.  See Reply at 7 n.10. The Amended Complaint disproves this assertion.  See, e.g., Am. Compl. at ¶ 152 (alleging that Defendants made materially false and misleading statements "despite knowing or recklessly disregarding that these statements were false when made") (emphasis added).

statement."  <u>Teachers' Retirement System of LA v. Hunter</u>, 477
F.3d 162, 184 (4th Cir. 2007); <u>see also</u> <u>Tellabs</u>, 127 S.Ct. at
2511 n.6 (declining to decide whether the group pleading doctrine
survived the PSLRA).

Defendants argue that Plaintiff's allegations fail to give
rise to a cogent and compelling inference of scienter for many
reasons.  To the extent that Defendants simply assert the same
arguments as were raised on the motion to dismiss, the Court
declines to reconsider its determinations.  The Court will
address those arguments that rely on recent authority, however.
First, relying on <u>Higginbotham v. Baxter International Inc.</u>, 495
F.3d 753 (7th Cir. 2007), Defendants contend that, post-<u>Tellabs</u>,
allegations based on confidential sources must be sharply
discounted, if not disregarded entirely.  <u>See</u> Mot. at 34.[11]  In
<u>Higginbotham</u>, the Seventh Circuit opined that:

> one upshot of the approach that <u>Tellabs</u> announced is
> that we must discount allegations that the complaint
> attributes to five "confidential witnesses" . . . .  It
> is hard to see how information from anonymous sources
> could be deemed "compelling" or how we could take
> account of plausible opposing inferences.  Perhaps
> these confidential sources have axes to grind.  Perhaps
> they are lying.  Perhaps they don't even exist.

495 F.3d at 756-57.  The court further stated that "usually that
discount will be steep," but declined to decide that such
allegations should be entirely disregarded in evaluating

---

[11]<u>Higginbotham</u> was decided on July 27, 2007, after the
conclusion of briefing on the motion to dismiss, but a little
over a month before this Court ruled on Defendants' motion.
Neither party filed a notice of supplemental authority with
respect to the decision.

scienter.  Id. at 757.

In January of this year, however, on remand from the Supreme Court, the Seventh Circuit decided Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702 (7th Cir. 2008) (Tellabs II).  The Supreme Court had directed the Court of Appeals to revisit its ruling reversing in part the district court's dismissal of the case in light of the clarified pleading standard for scienter. In Tellabs II, the Seventh Circuit considered allegations in the complaint based on 26 confidential sources and concluded that scienter was adequately plead.  In so doing, it limited its holding in Higginbotham, noting that the two cases were factually dissimilar.  The Tellabs II Court emphasized that the confidential sources were numerous, were adequately described, and based on the descriptions, would have been in a position to know the information alleged.  Tellabs II, 513 F.3d at 712. Moreover, multiple confidential sources corroborated much of the information.  Id.  Accordingly, the Court concluded that, while it would be better to have named sources, "the absence of proper names does not invalidate the drawing of a strong inference from [the confidential witnesses]' assertions."  Id.

The Amended Complaint in the instant case, like in Tellabs II, contains allegations from numerous confidential sources (19), provides job descriptions that suggest that the sources would have personal knowledge of the facts alleged[12] and, in many

---

[12]Defendants note that dates of employment are not provided for any of the confidential witnesses, all of whom are former

cases, provides multiple sources to corroborate facts.  See,
e.g., Am. Compl. at ¶ 61.  For these same reasons, this Court
concluded in deciding the motion to dismiss that the confidential
witnesses were set forth with adequate particularity.  See Lefkoe
I at 13.  The Court does not read Tellabs to require allegations
based on these sources to be discounted in weighing inferences of
scienter.[13]

     Defendants next argue, as they did on the motion to dismiss,
that Wildrick's stock sales during the Class Period do not create
a strong inference of scienter.  As discussed, supra, Plaintiff
alleges that Wildrick sold over eight hundred thousand shares of
his common stock during the Class Period - or 74% of his holdings
- for a profit of over $36 million.  Also as previously
discussed, according to Wildrick's SEC filings, he made the sales
pursuant to a Rule 10b5-1 plan entered into on October 3, 2005.

     In deciding the motion to dismiss, this Court did not deem
it appropriate to consider Wildrick's Rule 10b5-1 plan.  See
Lefkoe I at 17 n.11.  The parties appear to agree, however, that
this Court may take judicial notice of the existence of the plan
given that it is referenced in public filings with the SEC.  The

_____

employees of the Company.  While the Court agrees that this
additional information would be helpful in assessing the strength
of certain allegations, overall, assuming as we must the truth of
Plaintiff's factual allegations, this omission is not fatal.

     [13]In fact, despite the fact that Tellabs involved numerous
confidential sources, the Supreme Court made no mention of this
fact in reversing the lower court.  See Tellabs, 127 S.Ct. at
2506 (complaint contained references to 27 confidential sources).

substance of the plan is not before the Court for the reasons discussed, <u>supra</u>.  While the existence of the 10b5-1 plan may decrease the plausibility of an inference of fraudulent intent flowing from the stock sales, allegations of a pecuniary motive are not necessary to support a showing of scienter, <u>see</u> <u>Tellabs</u>, 127 S.Ct. at 2511, and this Court must look at the allegations of scienter as a whole.  <u>Id.</u> at 2509.  This Court certainly recognized this fact in its earlier opinion given that scienter was found to be adequately plead with respect to all three Individual Defendants, even though only Wildrick was alleged to have engaged in insider trading.  <u>See</u> <u>Lefkoe I</u> at 17 (noting that Plaintiff's allegations of scienter "do not rest solely on Wildrick's stock sale").  Wildrick's sales certainly created no inference with respect to either Ullman or Black.

As discussed in this Court's prior opinion, Plaintiff has sufficiently plead that the Individual Defendants knew of the alleged excess of inventory and the unusual level of promotional activity resulting therefrom.  <u>See, e.g.</u>, Am. Compl. at ¶ 61 (alleging that concerns about excess of inventory were conveyed to Black by a Senior Planner and a Planner).  This creates a plausible inference of fraudulent intent.  The majority of the opposing inferences offered by Defendants arise from the Individual Defendants' history with the Company and the Company's excellent financial performance both before and after the first

quarter of FY 2006.[14]  <u>See</u> Mot. at 28.  Essentially, Defendants'
argue that the Individual Defendants would have had no reason to
commit fraud for one quarter.  Similarly, Defendants argue that
the fact that the Individual Defendants are alleged to have taken
action to increase sales in the face of the gross profit margin
declines creates a nonfraudulent inference.  Plaintiff responds
that the increase in sales of discounted merchandise was alleged
to be part of the cause of the gross profit margin decline and
cannot, therefore, create an inference in Defendants' favor.
Finally, Defendants argue that the fact that disclosure of the
financial results for the first quarter of FY 2006 was "imminent
and inevitable" negates an inference of scienter.

No doubt this is a close case, but the Court remains
persuaded that Plaintiff has alleged facts sufficient to support
an inference of scienter at least as compelling as these opposing
inferences.  Plaintiff's allegations that the Individual
Defendants had knowledge of the alleged inventory surplus and
unusual promotional activity create a strong inference of
recklessness given the alleged false and/or misleading public
statements that this Court already has determined were pled with
sufficient particularity to survive a motion to dismiss.  <u>See</u>

---

[14]Defendants also assert that an opposing inference can be
drawn from the fact that the Company did not make quarterly
projections as a matter of policy and, accordingly, were under no
duty to update.  As Plaintiff notes, however, this argument is
more properly addressed to the issue of whether omissions
rendered certain statements false and misleading.  Defendants do
not, however, challenge the Court's prior ruling on that issue.

<u>Novak v. Kasaks</u>, 216 F.3d 300, 308 (2nd Cir. 2000) (noting that "securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements"). For these reasons and those reasons stated in <u>Lefkoe I</u>, Defendants' motion for judgment will be denied.

### E.  Interlocutory Appeal

Defendants ask this Court to certify this decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Section 1292(b) provides, in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Thus, a party seeking certification must "show (1) that a controlling issue of law exists (2) about which there is a substantial basis for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation." <u>Riley v. Dow Corning, Corp.</u>, 878 F.Supp. 728, 731 (M.D.N.C. 1992). The Fourth Circuit has opined that "§ 1292(b) should be used sparingly and thus that its requirements must be strictly construed." <u>Myles v. Laffitte</u>, 881 F.2d 125, 127 (4th Cir. 1989).

Defendants assert that there are five controlling questions

of law implicated by this Court's ruling that justify
certification of the decision for appeal: 1) the extent to which
statements made by confidential witnesses should be discounted,
2) the extent to which an inference of scienter may be drawn from
stock sales pursuant to a Rule 10b5-1 plan by only one of three
individual defendants, 3) whether the Court must discount any
inference of scienter drawn from stock sales made pursuant to a
10b5-1 plan, 4) whether an inference of scienter may be drawn
from the failure to make an interim disclosure within a fiscal
quarter, and 5) whether the Court is required to consider an
inference of non-fraudulent intent arising from a Company's prior
disclosures to shareholders and warnings.  Mot. at 48-49.
Defendants state in a conclusory fashion that there is
substantial basis for a difference of opinion as to these issues
and that an immediate appeal would materially advance the
resolution of this litigation.

Defendants argument is undercut by the fact that the
majority of the purported questions of law actually involve
application of settled law to complex facts.  For example, as the
Court explained, _supra_, the weight to be accorded to the
statements of the confidential witnesses depends on many factors
including the amount of description provided, the positions held
by the witnesses, and the amount of corroboration.

Moreover, as Plaintiff correctly points out, should this
Court certify this decision and should the Fourth Circuit

exercise its discretion to hear the appeal and decide in
Defendants' favor, it is likely that dismissal would be without
prejudice to Plaintiff's right to amend.  Thus, even a successful
interlocutory appeal would not necessarily resolve the
litigation.  Interposing an appeal at this time would only serve
to delay the resolution of this matter and distract the parties
from the ongoing discovery and briefing of class certification.
For these reasons, the Court will deny Defendants' motion to
certify this decision pursuant to section 1292(b).

**IV.  MOTION TO COMPEL**

The Court now turns to Defendants' "Motion to Compel
Plaintiff to Identify 'Confidential Witnesses' and to Produce
Other Information."  Paper No. 97.  Defendants seek an order
compelling Plaintiff to respond to three interrogatories.

**A.  Interrogatory 14**

Interrogatory No. 14 asks the Plaintiff to identify "each
and every Confidential Witness who is referenced in the
Complaint."  As discussed above, Plaintiff included allegations
from 19 confidential witnesses (CWs) in the Amended Complaint.
Each CW was a former employee of the Company and was identified
by their former job title and, in the case of certain employees,
by the region in which they worked.  See, e.g., Am. Compl. at ¶
40 (identifying a "former Store Manager who worked in one of the
Company's Virginia stores ('Store Manager 1')").

In its initial disclosures under Rule 26(a)(1), Plaintiff provided the names of 58 former employees of the Company as "witnesses whose documents or deposition testimony may be relevant to this action," provided addresses and telephone numbers, and provided a brief description of the information each would possess.  <u>See</u> Pl's Am. 26(a)(1) Disclosures.  It is largely undisputed that this list includes the 19 CWs.[15]  Thus, the precise dispute concerns whether Plaintiff is required to match up the names provided in the initial disclosures with the particular CWs listed in the Amended Complaint.  Defendants contend that this is quintessential discoverable information, while Plaintiff argues that this information is protected under the work product doctrine.

Each party cites numerous non-binding cases supporting their positions.  This Court is persuaded by the reasoning of the majority of courts addressing this issue that where a plaintiff highlights particular witnesses' roles within the complaint, a discoverable matter is generated.  <u>See Mazur v. Lampert</u>, Civ. No. 04-61159, 2007 WL 917271 (S.D. Fla. Mar. 25, 2007); <u>In re Aetna</u>

---

[15]Defendants argue that, based on their review of the list and Company employment records, certain CWs identified in the Amended Complaint could not possibly be included in Plaintiff's initial disclosures.  One such omission was conceded by Plaintiff, but has been corrected by amendment of the initial disclosures after a meet and confer session to attempt to resolve the instant dispute.  Because the Court will grant Defendants' motion to compel, it need not address any other alleged omissions.

Inc. Sec. Litig., No. Civ. A. MDL 1219, 1999 WL 354527 (E.D. Pa.
May 26, 1999); In re Faro Tech Sec. Litig., No. 6:05-CV-1810-Orl-
220DAB, 2008 WL 205318 (M.D. Fla. Jan. 23, 2008); Brody v. Zix
Corp., No. 3-04-CV-1931-K, 2007 WL 1544638 (N.D. Tex. May 25,
2007); In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631 (N.D.
Ga. 2002); In re Harmonic, Inc. Sec. Litig., 245 F.R.D. 424 (N.D.
Cal. 2007).  But see In re MTI Technology Corp. Securities
Litigation II, No. SACV 00-0745 DOC, 2002 WL 32344347 (C.D. Cal.
June 13, 2002)(identities of confidential witnesses protected
under the work product doctrine; In re Ashworth Inc. Sec. Litig.,
213 F.R.D. 385 (S.D. Cal. 2002); In re St. Paul Travelers Sec.
Litig. II, Civ. No. 04-4697, 2007 WL 1424673 (D. Minn. May 10,
2007); In re Cigna Corp. Sec. Litig., Civ. No. 02-8088, 2006 WL
263631 (E.D. Pa. Jan. 31, 2006).

Plaintiff's theory is that matching up the names of the CWs
with the names provided in the initial disclosures would reveal
Plaintiff's counsel's mental impressions about those witnesses -
i.e., that these witnesses were more important or possessed more
valuable information.  As the Faro Court reasoned, however,
Plaintiff has "already revealed which witnesses counsel finds
important, by setting forth specific information as to their
knowledge . . . . Plaintiff has already pled generally who [the
CWs] are . . . and specifically what they know.  Their name and
address does not add to counsel's mental impression."  2008 WL

205318 at *2 n.1.  Thus, any work product inherent in the production of a list of this subset of names would be minimal.

Moreover, as the <u>Harmonic</u> Court recognized, the identities of the CWs will inevitably be revealed in the course of discovery.  245 F.R.D. at 427 ("The issue here, . . . , is not if the CWs' identities will ever be discovered, but rather when they will be discovered.").  Plaintiff argues, in fact, that since Defendants have already been able to match up certain of the CWs to the names on the initial disclosures based on employment records and, after depositions, will undoubtedly be able to match all of the witnesses, they have made no showing that they need this information.  <u>See</u> Opp'n at 6.  Thus the issue appears to be whether Defendants should bear the considerable expense of deposing numerous witnesses to discover these facts or whether Plaintiff, with exceedingly minimal expense, should be compelled to disclose it.  The Court concludes that Defendants' need for the information outweighs a minimal work product protection accorded to the information.  <u>See</u> <u>Miller v. Ventro Corp.</u>, Civ. No. C01-01287, 2004 WL 868202 *2 (N.D. Cal. April 21, 2004).

Finally, the policy justifications urged by Plaintiff for protecting the CWs identities are lacking where, as here, the CWs are <u>former</u> employees of the Company.  <u>See</u> <u>Mazur</u>, 2007 WL 917271 at *5; <u>But see</u> <u>In re MTI Technology Corp. Securities Litigation II</u>, 2002 WL 32344347 at *5 (concluding that former employees

could still be subject to retaliation).  There is no dispute that
all of the CWs identified in the Amended Complaint no longer work
for the Company.

For all of these reasons, the Court will grant Defendants'
motion to compel Plaintiff to respond to Interrogatory 14 by
providing the names of each witness identified as a CW in the
Amended Complaint and matching that witness to the description
provided therein.  Plaintiff is not required, however, to
disclose the remaining information requested in the interrogatory
which is either more easily obtainable by Defendants (i.e., the
positions held by each witness and the witnesses' dates of
employment) or is evident on the face of the Amended Complaint
(i.e., each paragraph that references the CW).

### B. Interrogatories No. 3 & 4

Defendants also seek to compel responses to two related
interrogatories.  Interrogatory No. 3 requests that Plaintiff

> describe each and every communication, whether written
> or oral, you have had with any officer, employee,
> agent, representative, or former officer, employee,
> agent or representative of Defendants . . . [including]
> the date of each such communication, the form . . .,
> the place . . ., the parties to each such
> communication, all witnesses . . . , and the substance
> . . . in as verbatim form as possible.

Plaintiff objected on the grounds that the interrogatory was
overly broad and unduly burdensome, stated that they had been in
communication with former employees of the Company and had
identified all such persons in their initial disclosures, that

27

they had not had any "substantive" communications with any
current employees of the Company,[16] and objected on the basis of
privilege and/or work product doctrine to providing any
additional information about the communications.

Interrogatory No. 4 requests the same information with
respect to communications with "any person(s) other than
Defendants regarding the incidents, subject matter or
allegations" of the Amended Complaint.  Plaintiff objected to
Interrogatory 3 on the grounds that it was overly broad, unduly
burdensome, vague, ambiguous and harassing.  Plaintiff further
incorporated their response to Interrogatory 4 and asserted
privilege and/or work product doctrine as grounds for refusing to
turn over the information.  Lastly, Plaintiff stated that they
"had not had any non-privileged communications with any person
other than Defendants regarding the incidents, subject matter or
allegations of the Complaint."  Pl's Resp. to Interrog. 4.

The identity of persons interviewed in anticipation of
litigation generally is protected under the work product
doctrine.  See In re MTI Technology Corp. Securities Litigation
II, 2002 WL 32344347 at *3 (collecting cases); see also 8 Wright,

---

[16]Plaintiff explained that during their investigation they
had inadvertently contacted several current Company employees,
but that, upon learning of their employment status, terminated
the contacts.  Pl's Resp. to Interrog. 3.  Plaintiff has
subsequently provided Defendants with the identities of those
persons.  See Mot., Ex. 2 (email correspondence from counsel for
Plaintiff to counsel for Defendants).

Miller & Marcus, Federal Practice & Procedure § 2028 ("Surely an
interrogatory asking a party to identify all persons interviewed
would contravene work product.").  The particulars and the
substance of such communications also is protected.  In In re
Faro Technology Securities Litigation, for example, a case cited
by Defendants in support of their argument for disclosure of the
names of the CWs, the district court granted the motion to compel
with respect to the identities of the CWs, but denied the motion
to the extent the interrogatory sought "clearly protected
work-product information, such as the particulars of any and all
contacts with Plaintiff's attorneys or investigators" including
dates of interviews, locations of interviews, and the substance
of all communications.  2008 WL 205318 at *2.; see also Hickman
v. Taylor, 329 U.S. 495, 512 (1947).

Defendants' argue that even if Plaintiff objects to the
interrogatories on privilege and/or work product grounds, under
this Court's Local Rules, Plaintiff was required to provide the
name of the person making each allegedly privileged
communication, the names of persons present, the dates and places
of the communications, and the general subject matter.  See L.R.,
App. A, Guideline 9(c)(ii).  Defendants ignore, however, that
Guideline 9(c)(ii) specifically provides that such information
need be provided "unless divulging such information would cause
disclosure of the allegedly privileged information."  Id.  The

29

information Defendants seek in the interrogatories and that Plaintiff asserts is subject to work product privilege is precisely the same information Guideline 9(c) would require it to provide.[17]

As worded, both interrogatories seek information going to the heart of attorney work product.  Accordingly, the Court will deny the motion to compel responses to Interrogatories 3 and 4.

**V.   CONCLUSION**

For the foregoing reasons, Defendants' motion for judgment on the pleadings will be denied, Defendants' motion for leave to amend will be granted, and Defendants' motion to compel will be granted in part and denied in part.  A separate order consistent with this Memorandum will follow.

/s/

_____
William M. Nickerson
Senior United States District Judge

Dated: May 1, 2008

_____

[17]The Court notes that Defendants seem to misapprehend the distinction between attorney-client privilege and work product. Defendants assert that they are entitled to know who interviewed witnesses and whether any other persons were present during those interviews because "if Plaintiff's counsel interviewed any . . . witnesses in the presence of third parties, those communications would not be protected work product."  Reply at 9.  Disclosure of protected work product information to third parties, however, does not constitute a waiver of the privilege.  See, e.g., Wells v. Liddy, 37 Fed. Appx. 53, 65 (4th Cir. 2002) ("Unlike the attorney-client privilege, however, the work-product privilege is not waived by mere disclosure but instead by making "testimonial use" of the protected material.").

30